AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | )   Case No.  MJ18-372 |
| Information associated with the cellular telephones assigned call numbers (360) 306-1817 and (262) 385-3613, that is stored at premises controlled by AT&T | )<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A, which is attached hereto and incorporated herein by reference.

located in the _____ Southern _____ District of _____ Florida _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:

See Affidavit of SA Brian A. Faria, HSI, which is attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian A. Faria, Special Agent, HSI
*Printed name and title*

Sworn to before me pursuant to CrimRule 4.1.

Date: ___08/16/2018___

_____
*Judge's signature*

City and state: Bellingham, Washington

Paula L. McCandlis, U.S. Magistrate Judge
*Printed name and title*

USAO# 2018R00962

# AFFIDAVIT OF BRIAN A. FARIA

STATE OF WASHINGTON )

) ss

COUNTY OF WHATCOM )

I, BRIAN A. FARIA, a Special Agent with Homeland Security Investigations, being first duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with United States Homeland Security Investigations (HSI), and have been so employed for approximately fourteen years. In order to become a Special Agent, I successfully completed the Special Agent Training course at the Federal Law Enforcement Training Center in Glynco, Georgia, and completed the Customs Basic Enforcement School Training program. I have received over 500 hours of training at the Federal Law Enforcement Training Center in such areas including, but not limited to: criminal law, crime scene processing, interview techniques, search warrant application, firearms, arrest techniques and criminal procedures. Prior to my employment with HSI, I was an Inspector with the United States Customs Service. I also served years in the United States Air Force as a Security Police officer.

2. I am currently assigned to the National Security/Public Safety group of Homeland Security Investigations, Blaine, Washington, which focuses on the enforcement of immigration laws (Title 8, United States Code) – to include human trafficking and human smuggling, as well as investigation of transnational gangs. I am currently authorized to investigate and enforce violations of federal criminal statutes, including those found in Titles 8 of the United States Code.

3. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications

1    with others who have personal knowledge of the events and circumstances described
2    herein; and information gained through my training and experience.

3                        **PURPOSE OF THIS AFFIDAVIT**

4         4.      I make this affidavit in support of an application for a search warrant for
5    information associated with certain cellular telephones assigned call numbers (360)
6    306-1817 (hereinafter **"Target Telephone 1"** or **"TT1"**), with International Mobile
7    Subscriber Identity (IMSI) 310410043380385, and (262) 385-3613 (hereinafter **"Target**
8    **Telephone 2"** or **"TT2"**), with IMSI 310410043380209, (collectively **"Target**
9    **Telephones"**), that is stored at premises controlled by **AT&T**, a wireless telephone
10   service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.
11   The information to be searched is described in the following paragraphs and in
12   Attachment A.  This affidavit is made in support of an application for a search warrant
13   under 18 U.S.C. § 2703(c)(1)(A) to require **AT&T** to disclose to the government copies
14   of the information further described in Section I of Attachment B.  Upon receipt of the
15   information described in Section I of Attachment B, government-authorized persons will
16   review the information to locate items described in Section II of Attachment B.

17        5.      Based on the facts set forth in this affidavit, there is probable cause to
18   believe that violations of Title 8, United States Code, Section 1324 have been committed,
19   are being committed, and will be committed by unknown targets of this investigation.
20   There is also probable cause to search the information described in Attachment A for
21   evidence, instrumentalities, contraband, or fruits of these crimes as further described in
22   Attachment B.

23        6.      This warrant is being submitted via electronic means pursuant to local
24   Criminal Rule CrR 41(d)(3).

25   **RELEVANT LAW AND ADDITIONAL KNOWLEDGE OF THE AFFIANT**

26        7.      I know from training and experience, that pursuant to Title 8, United States
27   Code, Section 1324(a) (1)(A)(i), it is illegal to bring, or attempt to bring, an alien to the
28   United States in any matter whatsoever other than at a designated port of entry or a place

AFFIDAVIT OF BRIAN FARIA - 2
USAO# 2018R00962

1    other than as designated by the Secretary of the Department of Homeland Security. I also

2    know that this section is applicable whether or not an alien has received prior official

3    authorization to come to, enter, or reside in the United States.

4            8.      In addition, I know that Title 8, United States Code, Section

5    1324(a)(2)(B)(ii) makes it illegal for an individual to either knowingly, or in reckless

6    disregard of the fact that an alien has not received prior official authorization to come to,

7    enter, or reside in the United States, bring or attempt to bring to the United States

8    whatsoever, such alien for private financial gain.

9            9.      Lastly, I know that Title 8, United States Code, Section

10   1324(a)(1)(A)(v)(II) makes is unlawful to aid or abet the commission of a crime such as

11   Title 8, United States Code, Section 1324(a)(1)(A)(i), and Title 18, United States Code,

12   Section 2 makes it unlawful to aid or abet the commission of any offense against the

13   United States.

14           10.     From my training and experience as a HSI Special Agent assigned to

15   investigate crimes such as Title 8, United States Code, Section 1324, *et seq.*, I know

16   that many aliens who are unable to secure either non-immigrant or immigrant visas to

17   enter the United States lawfully, chose to enter the United States illegally between the

18   ports of entry on the southern and northern borders.

19           11.     I also know that, due to their general unfamiliarity with the terrain and the

20   border environment, as well as the methods and routes used to successfully cross the

21   border without detection by government officials, most aliens seeking to enter the United

22   States without inspection hire an alien smuggler with experience smuggling individuals

23   into the United States without detection.

24           12.     In addition, I am aware that there are a number of Alien Smuggling

25   Organizations (ASOs) that operate in the lower-mainland of British Columbia, Canada.

26   These ASOs typically charge aliens $2,000-$5,000 to be smuggled across the border into

27   the United States. Variations in the fee charged tend to reflect whether an alien is housed

28   by the ASO either prior to or after their illegal border crossing, whether the ASO

AFFIDAVIT OF BRIAN FARIA - 3
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   transports the alien a significant distance before or after the illegal entry and, lastly, the

2   relative risk of the route used to enter the United States.

3         13.    ASOs operating in the lower-mainland of British Columbia typically have

4   associates in the United States who are charged with picking up smuggled aliens once

5   they cross the border. Typically, these associates transport the aliens to the Seattle-area

6   and may then assist the aliens with travel arrangements to other locations in the United

7   States.  This may include facilitating a driver to transport the aliens to other states due to

8   the fact that many illegal entrants lack the identification required to travel by air or other

9   mass transportation.

10         14.    Lastly, I know that many of these ASOs are employed by alien smuggling

11   brokers who arrange for the smuggling of aliens from their home countries, through

12   various transit nations, into the United States for sums of $30,000 to $70,000 USD. These

13   brokers often also arrange for fraudulent documents to be utilized by aliens to transit

14   through various countries.

15   **STATEMENT OF PROBALE CAUSE**

16         15.    In July 2018, Homeland Security Investigations (HSI) Blaine initiated an

17   investigation addressing the increased apprehensions by U.S. Border Patrol of foreign

18   nationals crossing illegally into the United States between the designated Ports of Entry

19   in Whatcom County, Washington.  Based upon information obtained during these

20   apprehensions, Border Patrol Intelligence agents identified **TT1** and **TT2** as being

21   associated with several events of suspected alien smuggling.  Information obtained during

22   the investigation indicates that smuggling organizations are using cellular telephones both

23   to direct aliens where to cross the border, and to coordinate the pick-up of the smuggled

24   alien once they have illegally crossed into the United States.

25         16.    Specifically, on April 3, 2018, at approximately 10:49 p.m., United States

26   Border Patrol agents in Sumas, WA apprehended three nationals of India who had

27

28

AFFIDAVIT OF BRIAN FARIA - 4
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    crossed into the United States illegally[1] near Sumas, WA. Based upon a review of the cell

2    phone of one of the apprehended aliens, law enforcement learned that the last incoming

3    call was from **TT1**.

4         17.    On April 13, 2018, at approximately 9:10 p.m., United States Border Patrol

5    agents in Sumas, WA, observed two individuals illegally enter the United States from

6    Canada.  Both individuals were citizens and nationals of India.  Approximately eight

7    minutes later, Border Patrol agents apprehended these individuals. An examination of a

8    cellular phone from one of the apprehended subjects showed the last incoming call was

9    from **TT1** at 8:54 p.m.  The phone call log also showed an incoming call from **TT2** at

10   approximately 6:06 p.m.  Additionally, the number for **TT2** was saved as a contact in the

11   cellular phone.  Finally, a review of text messages on the apprehended alien's phone

12   showed that on April 12, 2018, the user of **TT2** sent a text message providing a meet

13   location of  7350 120 Street in Surrey, British Columbia.

14        18.    On April 14, 2018, at approximately 10:09 p.m., United States Border

15   Patrol agents in Sumas, WA apprehended three nationals of India who had crossed into

16   the United States illegally near Sumas, WA.  One of the apprehended subjects was in the

17   possession of a cellular telephone.  After an initial examination of the phone by Border

18   Patrol agents, the phone appeared to have been sanitized (all call logs, contacts and

19   messages appear to have been deleted).  However, while agents were processing the

20   subjects for immigration charges, the cell phone that had been sanitized received two

21   incoming calls from **TT1**.

22        19.    On June 28, 2018, at approximately 10:40 p.m., United States Border Patrol

23   agents in Sumas, WA, began tracking five individuals – via electronic means – who

24   crossed into the United States near Sumas, WA.  At approximately 11:48 p.m., Border

25

26   _____

[1] As used herein, an illegal entry into the United States means an entry at a place not designated
27   as a port of entry.  For each of the illegal entries detailed in this affidavit, the aliens illegally
     entering the United States were not in possession of any immigration documents that would
28   allow them to enter, pass through, or remain in the United States.

AFFIDAVIT OF BRIAN FARIA - 5
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Patrol agents apprehended these five individuals.  All five individuals were citizens and
2   nationals of India.  An examination of a cellular phone in the possession of one the
3   apprehended subjects showed three incoming calls from **TT1** immediately preceding the
4   attempted illegal entry into the United States.  The first incoming call was at 10:09 p.m.
5   and was thirty-six seconds long, the second call was at 10:17 p.m. and was seventeen
6   seconds long, and the third call was at 10:34, with a duration of seventy-three minutes.
7   Based upon the length of this last call, it appears that apprehended alien was talking to
8   the user of **TT1** at the time of his apprehension.

9          20.    In addition to the calls from **TT1** noted above, law enforcement located
10  incoming calls from **TT2** on two additional phones that were examined pursuant to this
11  apprehension.   The phone calls from **TT2** to these other two phones were made at
12  approximately 9:40 p.m. on June 28, 2018.

13         21.    On July 9, 2018, at approximately 12:14 a.m., United States Border Patrol
14  agents in Sumas, WA, apprehended two nationals of India who had crossed into the
15  United States illegally near Sumas, WA.  While in custody, a cellular phone belonging to
16  one of the apprehended subjects received three phone calls from the **TT1**.

17         22.    On July 10, 2018, at approximately 12:50 a.m., United States Border Patrol
18  agents in Sumas, WA, apprehended two nationals of India who had crossed into the
19  United States illegally near Sumas, WA. An examination of two cellular phones
20  belonging to the apprehended subjects showed multiple incoming and outgoing calls on
21  July 9, 2018 to **TT1**.  One of these calls was at 12:08 a.m. and lasted approximately
22  fifteen minutes, *i.e.*, ended shortly before the subjects were apprehended. Furthermore,
23  one of the phones had both outgoing and incoming calls from **TT2** – all of which
24  occurred within thirty minutes of apprehension.

25         23.    On July 15, 2018, at approximately 11:55 p.m., a Sumas Police Department
26  Officer requested mutual assistance from Sumas Border Patrol agents regarding contact
27  with four Indian nationals.  Based upon information provided by the Sumas Police
28  Officer and the apprehended aliens, U.S. Border Patrol agents determined that all four

AFFIDAVIT OF BRIAN FARIA - 6
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  subjects had crossed into the United States illegally near Sumas, WA, at approximately

2  11:45 p.m.  An examination of a cellular phone belonging to one the apprehended

3  subjects showed three incoming calls the night of July 15, 2018 from **TT1**, with the most

4  recent one occurring at 11:36 p.m., with a duration of twenty-six minutes.  Based upon

5  the length of this last call, and as noted with respect to a previous apprehension, with

6  respect to the June 28, 2018, apprehension, it appears that the alien was talking to the

7  user of **TT1** at the time of his apprehension.  Furthermore, one of the cellular phones

8  examined by law enforcement had a missed call from **TT2** at approximately 1:15 p.m.

9        24.    On July 11, 2018, Border Patrol submitted an Immigration Enforcement

10  Subpoena to AT&T Wireless requesting subscriber and call information for **TT1**.  On

11  July 26, 2018, AT&T responded to the subpoena and identified **TT1** as a prepaid account

12  with no subscriber listed. On July 2, 2018, Border Patrol submitted an Immigration

13  Enforcement Subpoena to AT&T Wireless requesting subscriber and call information for

14  **TT2**.  On July 20, 2018, AT&T responded to the subpoena and identified **TT2** as a

15  prepaid account with no subscriber listed.  Based upon my training and experience, I

16  know that use of a pre-paid telephone is a common practice within smuggling

17  organizations, as it conceals the identity of the user thereby making it more difficult for

18  law enforcement to identify members of the smuggling organization.

19        25.    In my training and experience, I have learned that **AT&T** is a company that

20  provides cellular telephone access to the general public.  I also know that providers of

21  cellular telephone service have technical capabilities that allow them to collect and

22  generate information about the locations of the cellular telephones to which they provide

23  service, including cell-site data, also known as "tower/face information" or "cell

24  tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers

25  covering specific geographic areas) that received a radio signal from the cellular

26  telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

27  telephone connected.  These towers are often a half-mile or more apart, even in urban

28  areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to

AFFIDAVIT OF BRIAN FARIA - 7
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  a wireless device does not necessarily serve every call made to or from that device.

2  Accordingly, cell-site data provides an approximate location of the cellular telephone but

3  is typically less precise than other types of location information, such as E-911 Phase II

4  data or Global Positioning Device ("GPS") data.

5      26.    Based on my training and experience, I know that **AT&T** can collect cell-

6  site data about the **Target Telephones**.  I also know that wireless providers such as

7  **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which

8  they provide service in their normal course of business in order to use this information for

9  various business-related purposes.

10     27.    Based on my training and experience, I know that wireless providers such

11 as **AT&T** typically collect and retain information about their subscribers in their normal

12 course of business.  This information can include basic personal information about the

13 subscriber, such as name and address, and the method(s) of payment (such as credit card

14 account number) provided by the subscriber to pay for wireless telephone service.  I also

15 know that wireless providers such as **AT&T** typically collect and retain information

16 about their subscribers' use of the wireless service, such as records about calls or other

17 communications sent or received by a particular phone and other transactional records, in

18 their normal course of business.  In my training and experience, this information may

19 constitute evidence of the crimes under investigation because the information can be used

20 to identify the **Target Telephones'** user or users and may assist in the identification of

21 co-conspirators and/or victims.

## **AUTHORIZATION REQUEST**

23     28.    Based on the foregoing, I request that the Court issue the proposed search

24 warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25     29.    I further request that the Court direct **AT&T** to disclose to the government

26 any information described in Section I of Attachment B that is within its possession,

27 custody, or control.  Because the warrant will be served on **AT&T**, who will then

28

AFFIDAVIT OF BRIAN FARIA - 8
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  compile the requested records at a time convenient to it, reasonable cause exists to permit

2  the execution of the requested warrant at any time in the day or night.

3  ## CONCLUSION

4      30.     Based on the facts set forth in this affidavit, there is probable cause to

5  believe that violations of Title 8, United States Code, Section 1324, have been

6  committed, are being committed, and will be committed by the user(s) of the **Target**

7  **Telephones** and that there is probable cause to believe that requested information will

8  reveal evidence of these violations, including the user's location, smuggling trails and

9  stash house locations.  I therefore request that the Court issue the requested warrant.

10

11

12

13                              BRIAN A. FARIA
                                Special Agent, HSI
14

15      The above-named agent provided a sworn statement attesting to the truth of the

16  contents of the foregoing affidavit on this 16th day of August, 2018.

17

18

19

20                              HON. PAULA L. MCCANDLIS
                                United States Magistrate Judge
21

22

23

24

25

26

27

28

AFFIDAVIT OF BRIAN FARIA - 9
USAO# 2018R00962

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A
### Property to Be Searched

This warrant applies to records and information associated with the cellular telephones assigned call numbers (360) 306-1817 (hereinafter "**Target Telephone 1**" or "**TT1**"), with International Mobile Subscriber Identity (IMSI) 310410043380385 and (262) 385-3613 (hereinafter "**Target Telephone 2**" or "**TT2**"), with IMSI 310410043380209, that is stored at premises controlled by **AT&T**, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

ATTACHMENT A - 1
USAO# 2018R00962

## ATTACHMENT B
### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period February 1, 2018, until the date of this warrant:

    a.    The following information about the customers or subscribers of the Account:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

ATTACHMENT B - 1
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.   All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.   information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 8, United States Code, Section 1324 during the period February 1, 2018, until the date of this warrant.

ATTACHMENT B - 2
USAO# 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970